CRAIN, J.
| ¡.Richard Fischer and Louisiana Farm Bureau Insurance Agency appeal a judgment in favor of Lauren Roberts, challenging the trial court’s determination that Fischer is liable and 100% at fault in causing the motor vehicle accident that he avoided, and the amount of damages awarded. We reverse.
FACTS
This matter arises out of an accident that occurred when the Toyota Solara driven by Roberts was rear-ended by the Kia driven by Lauren Rudzis. The accident occurred on August 26, 2008, at approximately 3:30 p.m., on Lee Drive in Baton Rouge. Roberts had been proceeding southbound on Lee Drive when she slowed and came to a stop behind stopped traffic. The vehicle immediately behind her was a Chevrolet Blazer driven by Fischer. After Roberts stopped her vehicle, Fischer’s Blazer veered off of the two- *605 lane roadway into a parking lot. Rudzis’ vehicle, which had been traveling immediately behind Fischer’s vehicle, collided with the rear of Roberts’ stopped vehicle, which caused Roberts’ vehicle to collide with the rear of the vehicle in front of her. Roberts suffered injuries as a result of the accident.
Roberts instituted this suit for damages, naming as defendants Rudzis, Fischer, and Fischer’s automobile liability insurer, Farm Bureau. After Roberts stipulated that the amount in controversy did not exceed the jurisdictional amount required for a jury trial, the matter proceeded to a |sbench trial against Fischer and Farm Bureau.[1] The matter was taken under advisement. In reasons for judgment, the trial court stated:
Having carefully considered the testimony in this matter together with the evidence submitted with respect to personal injury, physical damages, and los[t] wages, and other specials, the court is firmly of the opinion that the petitioner has established that she was free from all fault in this accident and that one hundred percent of the fault should be imposed upon the defendant, Mr. Fischer. As a result of his reckless driving in leaving the road very unexpectedly creating a hazardous condition, one hundred percent of the fault is supported by the evidence. The parties hereto have stipulated to an award not to exceed $50,000 in accordance with the jurisdictional amount. Therefore, the court is constrained to award damages subject to that stipulation, which damages would otherwise exceed that amount. Therefore, the court awards $50,000.
The trial court signed a judgment on February 11, 2013, in favor of Roberts and against Fischer and Farm Bureau in the amount of $50,000.00. Fischer and Farm Bureau now appeal.
EVIDENTIARY RULING
Rudzis, the rear-ending driver, did not testify or appear at trial. With regard to liability, the trial court was presented with the testimony of Roberts, Fischer, Sergeant Eugene Rafferty, who investigated the accident, and Christy Chachere, the front passenger in Rudzis’ vehicle. Sergeant Rafferty had no independent recollection of the accident and used the police report that he prepared to refresh his memory. Attached to the police report were statements by the drivers involved, including Rudzis. Over objection by Fischer and Farm Bureau, the trial court accepted into evidence the police report and written statements on the basis that it was “part of the res gestae and the ordinary business record.” Fischer contends that the evidence is hearsay and the trial court’s erroneous admission of that evidence interdicted [4the fact-finding process, thus subjecting the trial court’s findings on liability to de novo review.
A trial court is granted broad discretion in its evidentiary rulings. Travis v. Spitale’s Bar, Inc., 12-1366 (La.App. 1 Cir. 8/14/13), 122 So.3d 1118, 1126, writs denied, 13-2409 (La.1/10/14), 130 So.3d 327 and 13-2447 (La.1/10/14), 130 So.3d 329. The standard of review for a trial court’s evidentiary rulings is abuse of discretion; the trial court’s ruling will not be disturbed unless it is clearly erroneous. Gorman v. Miller, 12-0412 (La.App. 1 Cir. 11/13/13), 136 So.3d 834, 840, writ denied, *606 13-2909 (La.3/21/14), 135 So.3d 620; Riverside Recycling, LLC v. BWI Companies Inc. of Texas, 112 So.3d 869, 874 (La.App. 1 Cir.2012). De novo review is not warranted in every case of evidentiary error. Rather, it is limited to consequential errors which interdicted the factual findings, thereby prejudicing or tainting the judgment rendered. See Wingfield v. State, ex rel. Dept. of Transp. and Development, 01-2668 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, 786, writs denied, 03-0313, 03-0339, 03-349 (La.5/30/03), 845 So.2d 1059-1060, cert. denied, 540 U.S. 950, 124 S.Ct. 419, 157 L.Ed.2d 282. See also McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986).
 Although the trial transcript reflects that the police report and attached statements were admitted into evidence as “Plaintiffs Exhibit 3,” that exhibit is not included in the appellate record.[2] The record reflects, however, that the trial court abused its discretion and was clearly erroneous in admitting the evidence as “part of the res gestae and the ordinary business record,” over Fischer’s objection to the evidence as hearsay.
| .^Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered into evidence to prove the truth of the matter asserted. La.Code Evid. art. 801C. Louisiana Code of Evidence article 801D(4) provides that the following is not considered hearsay:
Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
Article 801D(4) incorporates what was formerly Louisiana Revised Statutes 15:447 and 448, known as the res gestae exception to the hearsay rule. Res gestae is defined as events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants. State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, 765, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); State v. Patton, 10-1841 (La.App. 1 Cir. 6/10/11), 68 So.3d 1209,1220.
While the Louisiana Supreme Court has recognized the applicability of the res ges-tae exception in civil cases, it does not apply here. See State v. Lebleu, 137 La. 1007, 1029 (1915), 69 So. 808, 815. Sergeant Rafferty did not witness the accident. He testified that he did not specifically recall if he obtained the statements attached to his report while he was at the scene or afterward, and acknowledged that his report did not specify when the statements were obtained. The report and attached statements do not form part of the res gestae and do not fall within the hearsay exception of Article 801D(4).
|fiThe trial court additionally found the police report and statements to fall within the business records exception to the hearsay rule. Louisiana Code of Evidence article 803(6) provides that certain records of regularly conducted business activities are not excluded by the hearsay rule; however, “[p]ublic records and re- *607 ports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.” Article 808(8)(b) provides:
Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule: (i) Investigative reports by police and other law enforcement personnel.]
[[Image here]]
(iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.
Thus, the report and statements were not admissible under the business records exception to the hearsay rule.
On appeal, Roberts argues that the evidence, and particularly Rudzis’ statement, was properly admitted under Louisiana Code of Evidence article 803(1). We disagree. The present sense impression exception of Article 803(1) allows the admissibility of a “statement describing the event or condition made while the declar-ant was perceiving the event or condition, or immediately thereafter.” (Emphasis added.) The testimony of Sergeant Raf-ferty clearly indicates that the written statements were not made while the de-clarants were perceiving the events. To fall under the exception as one made “immediately thereafter,” the statement must have been made immediately after perceiving the event, “allowing only for ‘the time needed for translating observation into speech.’ ” Buckbee v. United Gas Pipe Line Co. Inc., 561 So.2d 76, 84 (La.1990). No evidentiary foundation was laid to satisfy the critical requirement of immediacy following the accident.
Roberts additionally argues that the evidence was properly admitted as a statement of an unavailable witness under Louisiana Code of Evidence article 804, which provides, in pertinent part:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
[[Image here]]
(6) Other exceptions. In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it. If, under the circumstances of a particular case, giving of this notice was not practicable or failure to give notice is found by the court to have been excusable, the court may authorize a delayed notice to be given, and in that event the opposing party is entitled to a recess, continuance, or other appropriate relief sufficient to enable him to prepare to meet the evidence.
Chachere testified that at the time of trial, Rudzis was in Cambodia with the United States Peace Corps. We need not determine whether this suffices to establish that Rudzis was unavailable for purposes of the unavailable witness exception because the record does not establish the requisite *608 foundation required by Article 804B nor the necessary findings by the trial court.
The police report and attached statements constitute hearsay and, as they do not fall within an exception to the hearsay rule, the trial court’s admission of that evidence was clearly wrong and constitutes an abuse of discretion. However, this determination alone does not warrant de novo review. See Riverside Recycling, LLC, 112 So.3d at 874. De novo review |sis warranted only if, in addition to determining that an evidentiary error occurred, it is determined that the evidentiary error interdicted the fact finding process. See Riverside Recycling, 112 So.3d at 874. It is only when the erroneously admitted evidence interdicts the factfinder’s answer to an essential question of fact, as opposed to a mere collateral question, that de novo review is warranted. See Brewer v. J.B. Hunt Transport, Inc., 09-1408 (La.3/16/10), 35 So.3d 230, 237-38.
Since the erroneously admitted evidence is not included in the appellate record and the record does not reveal what weight, if any, it was afforded, we are unable to determine whether its admission interdicted the determination of an essential issue of fact by the trial court. Specifically, we cannot conclude that the admission of the evidence interdicted the trial court’s finding that Fischer’s actions were a cause-in-fact of the accident, which we find to be the determinative issue in the case. Cf. Brewer, 35 So.3d at 238. Unable to make this determination, we must conclude that de novo review is not warranted in this case.[3]
LIABILITY
Fischer contends that the trial court erred in finding him liable and 100% at fault in causing the rear-end collision that he avoided. Roberts’ theory of causation is that Fischer’s action of leaving the roadway created a sudden emergency, which caused Rudzis’ vehicle to collide with her ^vehicle.[4] In its reasons for judgment, the trial court stated that Fischer was liable because his “reckless driving in leaving the road very unexpectedly [created] a hazardous condition.”
Liability under the particular facts of a case is determined by the duty-risk analysis, which requires the plaintiff to prove (1) the defendant had a duty to conform his conduct to a specific standard of care, (2) the defendant failed to conform his conduct to the appropriate standard of *609 care, (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries, (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries, and (5) actual damages. Brewer, 35 So.3d at 240. Roberts had the burden of proving that Fischer owed a duty, that he breached that duty, that his substandard conduct was a cause-in-fact of her injuries, that his substandard conduct was a legal cause of the accident, and that she suffered damages. See Id. If Roberts failed to establish any one of these elements, her claims against Fischer and Farm Bureau must fail, and she cannot recover against them. See Bellanger v. Webre, 10-0720 (La.App. 1 Cir. 5/6/11), 65 So.3d 201, 207, writ denied, 11-1171 (La.9/16/11), 69 So.3d 1149. Fischer avoided colliding with Roberts’ vehicle; however, there is no statutory or jurisprudential requisite of a physical impact between | invehicles for the imposition of liability in a personal injury case arising out of a motor vehicle accident. See Tyson v. King, 09-963 (La.App. 3 Cir. 2/3/10), 29 So.3d 719, 722.
Generally, cause-in-fact is the initial inquiry under the duty-risk analysis. Granger v. Christus Health Central Louisiana, 12-1892 (La.6/28/13), 144 So.3d 736, 766. The determination to be made is whether the harm would have occurred but for the defendant’s alleged substandard conduct or, when concurrent causes are involved, whether defendant’s conduct was a substantial factor in bringing about the harm. Granger, 144 So.3d at 766. Our supreme court has explained:
This court has made several different inquiries when applying the substantial factor test. For example, the court has stated that when there are multiple causes, clearly eause-in-fact exists when the plaintiffs harm would not have occurred absent the specific defendant’s conduct. Graves v. Page, 96-2201, p. 9 (La.11/7/97), 703 So.2d 566, 570. The court has also applied the substantial factor test by asking whether each of the multiple causes played so important a role in producing the result that responsibility should be imposed upon each item of conduct, even if it cannot be said definitively that the harm would not have occurred “but for” each individual cause. See id. (citing Trahan v. State, Department of Transportation & Development, 536 So.2d 1269, 1272 (La.App. 3 Cir.1988)). See also Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law, § 4-3 at 86-88 (1996) (noting that the substantial factor test operates well in cases where there are multiple possible causes-in-fact, but the trial judge or jury may not be able to conclude that the accident most likely would not have happened but for any one of the causes). Additionally, in LeJeune v. Allstate Ins. Co., 365 So.2d 471, 475 (La.1978), the court, in describing the substantial factor test, stated that “one must consider whether the actor’s conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm.”
Perkins v. Entergy Corp., 00-1372 (La.3/23/01), 782 So.2d 606, 612.
A trial court’s determination that a defendant’s conduct was a cause-in-fact of the plaintiffs injuries is a factual determination subject to the manifest error standard of review. Toston v. Pardon, 03-1747 (La.4/23/04), 874 So.2d 791, 799-800. A reviewing court must not reverse a trial court’s factual determination unless, after reviewing the entire record, it finds (1) that a reasonable factual basis does not exist for the finding, and (2) that the record establishes that the factfinder is clearly wrong or manifestly erroneous. Toston, 874 So.2d at 799-800.
*610 Roberts testified that she came to a stop on Lee Drive behind several stopped vehicles. The road was wet as it had just rained. She had been aware of vehicles traveling behind her but did not have the feeling that they were traveling too closely. Once stopped, she looked into her rearview mirror and saw the vehicle behind her (driven by Fischer) veer off of the roadway into a parking lot. She then looked back to ensure that the next vehicle stopped, and that vehicle (driven by Rud-zis) “slammed into the back of [her].” Roberts clarified that she saw Fischer swerve, immediately looked back, and her vehicle was impacted, guessing that the impact occurred approximately two seconds after she realized Fischer’s vehicle was off of the roadway. The impact of the collision pushed Roberts’ vehicle into the vehicle in front of it, essentially causing a chain collision.
Fischer was driving his Chevrolet Blazer immediately behind Roberts’ vehicle. He testified that he was approximately thirty yards behind Roberts’ vehicle when he observed that she was stopped. Fischer applied his brake, but when he was approximately fifteen yards behind Roberts’ vehicle determined that he could not stop behind Roberts. After discerning that it was safe for him to leave the roadway, Fischer drove through a grassy area next to a tree, skimmed the pavement, and came to rest in the corner of a semi-circle driveway in front of a daycare, whieh was past Roberts’ vehicle. Fischer testified that he was ten to fifteen yards from Roberts’ vehicle when he left the roadway and that he avoided making contact with any other | ^vehicles. Once stopped, he realized that an accident had occurred, checked on the drivers involved, and called 9-1-1.
Rudzis did not testify at trial and no admissible evidence was presented to establish Rudzis’ account of the events preceding her vehicle rear-ending Roberts’ vehicle. Rudzis’ passenger, Chachere, testified that Rudzis was proceeding on Lee Drive behind Fischer’s Blazer, whieh blocked the view of Roberts’ vehicle, which was in front of Fischer’s Blazer. Chach-ere did not remember the distance behind Fischer’s Blazer that Rudzis was traveling, but estimated that it was at- least a car length, and testified that prior to the Blazer leaving the roadway she had no concerns that Rudzis was following the Blazer too closely. Chachere explained that the Blazer quickly swerved off the roadway without warning, which was a surprise to her, after which she saw Roberts’ vehicle for the first time. Chachere testified that Rudzis “slammed on her brakes as soon as you could when she saw that there was stopped traffic in front of her.” Chachere did not think Rudzis’ reaction was delayed, but was not certain. Despite braking, Rudzis’ vehicle collided with Roberts’ vehicle.
The duty-risk analysis is employed on a case-by-case basis. Granger, 144 So.3d at 765. In this case, it is undisputed that Fischer’s vehicle was ahead of Rudzis’ vehicle on the two-lane road and suddenly left the roadway. Fischer’s uncontradict-ed testimony was that he was approximately ten to fifteen yards behind Roberts’ vehicle when he did so. The only admissible evidence as to Rudzis’ actions and perceptions was the testimony of Chachere, Rudzis’ front seat passenger. However, Chachere did not, and could not, testify as to what Rudzis actually observed and perceived before colliding with Roberts’ vehicle. Chachere’s uncontradicted testimony was that Rudzis’ vehicle was at least one car length behind Fischer’s. 113Chachere’s testimony establishes that Fischer’s vehicle blocked Chachere’s view of Roberts’ vehicle, which Chachere saw for the first time after Fischer left the roadway. The *611 evidence does not reflect when Rudzis first saw the Roberts vehicle.
When a preceding vehicle is obstructing a motorist’s view ahead, the motorist has a duty to leave sufficient space between himself and the preceding vehicle to stop in case of an unexpected hazard in the road ahead. Ly, 633 So.2d at 201. Considering the rainy roadway and, from Chachere’s testimony, the possibility that Rudzis’ visibility was obscured by Fischer’s vehicle, Rudzis had a duty to reduce her speed and maintain an appropriate distance that would have allowed her to safely stop her vehicle.[5] Compare Ly, 633 So.2d at 201; Fontenot, 512 So.2d at 1194-95; Urcia v. Department of Transp. and Development for State, 94-78 (La.App. 5 Cir. 5/31/94), 638 So.2d 416, 418.
Without any testimony by Rudzis regarding her own observations, Chach-ere’s testimony, which was at times equivocal, does not establish by a preponderance of the evidence that Fischer’s actions were a substantial factor in bringing about the harm to Roberts. It is not enough for Roberts to demonstrate that Fischer’s actions might have been a contributing factor to Rudzis rear-ending her. See Perkins, 782 So.2d at 618. Roberts was required to prove that it is more likely than not that Fischer’s actions were a substantial factor in bringing about the injuries she suffered when Rudzis rear-ended her. See Id. After reviewing the admissible evidence, we find that a reasonable factual basis does not exist for the trial court’s determination that Fischer’s conduct was a cause-in-fact of Roberts’ alleged |14inj uries. The trial court was clearly wrong in concluding that Roberts satisfied her burden of proof by a preponderance of the evidence.
Based on the admissible evidence, the trial court’s finding that Fischer is liable for the accident is manifestly erroneous.[6] Accordingly, the judgment rendered against Fischer and his insurer, Farm Bureau, must be reversed.
CONCLUSION
For the foregoing reasons, the February 11, 2013 judgment of the trial court is reversed, and Roberts’ claims against Richard Fischer and Louisiana Farm Bureau Insurance Agency, Inc. are dismissed with prejudice. Costs of this appeal are assessed to Lauren E. Roberts.
REVERSED AND RENDERED.
WELCH J. dissents and assigns reasons.
McCLENDON, J., dissents and assigns reasons.

. The parties explain in their briefs that Rud-zis was served via Louisiana’s Long Arm Statute. However, Rudzis did not answer the petition, file any pleading, or otherwise make any appearance. The matter was set for trial on Roberts’ motion without objection by Fischer and Farm Bureau.

. As the appellants, Fischer and Farm Bureau are charged with the responsibility of completeness of the record for appellate review, and the inadequacy of the record is imputable to them. See Niemann v. Crosby Development Co., L.L.C., 11-1337 (La.App. 1 Cir.5/3/12), 92 So.3d 1039, 1044.

. Since we have determined that the police report and attached statements should not have been admitted, its omission from the appellate record has no effect on our analysis of the remaining assignments of error under the manifest error standard.

. As the following motorist in the rear-end collision, Rudzis is presumed to be negligent for having breached the duty imposed by Louisiana Revised Statute 32:81 that the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway. See Mart v. Hill, 505 So.2d 1120, 1123 (La.1987); Eubanks v. Brasseal, 310 So.2d 550, 553 (La.1975); Ly v. State Through Dept, of Public Safety and Corrections, 633 So.2d 197, 201 (La.App. 1 Cir.1993), writ denied, 93-3134 (La.2/25/94), 634 So.2d 835. Roberts argues that the sudden emergency doctrine applies in this case. Under the sudden emergency doctrine, a following motorist may escape liability for a rear-end collision by establishing that the preceding motorist created a sudden emergency that the following motorist could not have reasonably anticipated. See Brewer, 35 So.3d at 241. However, our focus herein is whether Fischer's actions were a cause-in-fact of the rear-end collision between Roberts and Rud-zis. Because we determine that they were not, and do not reach the issue of comparative fault of the parties involved, we do not address the application of the sudden emergency doctrine.

. If Rudzis’ visibility was not obscured by Fischer’s vehicle, then Rudzis should have seen Roberts’ stopped vehicle and stopped safely behind her.

. As this determination resolves the issues presented in this appeal, we do not address the trial court’s determination that Rudzis was not at fault or Roberts' claims against Rudzis.